UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 5: 21-111-DCR-10 |
| ) | |
| V. ) | |
| ) | **MEMORANDUM OPINION** |
| CURTIS DEWAYNE MILLER, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On the second day of a second trial, Defendant Curtis Miller decided to plead guilty to one count of conspiring to distribute methamphetamine. [Record No. 374] Then, several weeks following his guilty plea, he filed a *pro se* motion to withdraw the guilty plea. [Record No. 407] Miller claims that his trial attorney, John Oakley, coerced him into pleading guilty by "assur[ing] [him] before and each morning of trial that [he] would be guaranteed life [imprisonment]" if he continued with his trial. [*Id.*]

Miller's motion will be denied because he has not presented a fair and just reason for withdrawing his guilty plea under Rule 11 of the Federal Rules of Criminal Procedure. Further, granting the relief sought by the defendant would severely prejudice the United States.

**I. Background**

A federal grand jury indicted Miller for one count of conspiring to distribute controlled substances in violation of 21 U.S.C. § 846 (Count 1), one count of possessing with the intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1) (Count 2), and one count of conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count

8). [Record No. 165] Miller proceeded to trial on November 1, 2022, after the Court denied the defendant's motion for a continuance. [Record Nos. 288, 289, 331] However, the Court declared a mistrial on November 3, 2022, because the jurors were deadlocked and unable to return a verdict. [Record No. 334]

The defendant's retrial began on December 13, 2022. [Record No. 372] At the beginning of the second day of trial, attorney Oakley notified the Court that Defendant Miller wished to enter a guilty plea. [Record No. 373] Under the parties' open plea agreement, Miller indicated a desire to enter a guilty plea to Count 1 of the superseding indictment in exchange for the government's dismissal of Count 8. (Count 2 was dismissed earlier in the proceedings.)

Miller was then placed under oath and questioned pursuant to Rule 11 of the Federal Rules of Criminal Procedure. [Record No. 424, pp. 4-8] The following colloquy occurred:

THE COURT: Mr. Miller, let me confirm that you have, in fact, received a copy of the superseding indictment in the case and that you've had adequate opportunity to discuss the charges with your attorney; is that correct?

MILLER: Yes.

THE COURT: Do you feel like you understand the charges that have been made against you in the case?

MILLER: Yes, sir.

THE COURT: And at this time, are you satisfied with the advice and representation given to you by your attorney?

MILLER: Yes, sir.

THE COURT: I understand that it's your intention to enter a guilty plea without a written plea agreement; is that accurate?

MILLER: Yes, sir.

THE COURT: . . . My understanding is that although you're entering an open plea, there's not a written plea agreement, part of your agreement with the government is that if you

enter a guilty plea to Count 1 that it will move to dismiss Count 8 . . . and it will not reinstate or move to reinstate Count 2.

 MILLER: Yes.

 THE COURT: Is that . . . the extent of the agreement you have with the government?

 MILLER: Yes.

 THE COURT: All right.  Have any other promises been made to you by any person in exchange for you agreeing to enter a guilty plea in the case?

 MILLER: No, sir.

 THE COURT: Has anyone made any threats or in any way forced you to enter a guilty plea in the case?

 MILLER: No, sir.

 THE COURT: Has anyone told you that you would receive a specific sentence if you entered a guilty plea?

 MILLER: No.

[*Id.* at pp. 6-8]

 Thereafter, the undersigned reviewed the statutory penalties, relevant parts of the United States Sentencing Guidelines, and the statutory factors of 18 U.S.C. § 3553(a) that would be considered before a sentence would be imposed.  [*Id.* at pp. 8-13]  Next, the Court reviewed Count 1 of the superseding indictment and asked Miller to explain, in his own words, what he did to commit the conspiracy offense.  The defendant responded by admitting that he "assisted [his] cousin, Craig Robertson, into selling methamphetamine."  [*Id.* at p. 14]  He further confirmed that his actions occurred during the time and in the location identified in the superseding indictment.

 More specifically, Miller confirmed that he knowingly assisted his cousin in distributing "a detectable amount of methamphetamine," and that the amounts involved in his

offense were "greater than 500 grams." [*Id.* at p. 15]  Finally, after summarizing the elements of the offense, the Court inquired whether the defendant believed that the United States could prove those elements beyond a reasonable doubt "if [the] case were to continue with the trial." The defendant responded in the affirmative.  [*Id.* at pp. 15-16]  After concluding that the defendant was competent and that his plea was knowing and voluntary, the undersigned accepted the defendant's guilty plea and scheduled a sentencing hearing for March 24, 2023. [*Id.* at p. 17]  And following the entry of Miller's guilty plea, the Court excused the jury. [Record No. 373]

On January 12, 2023, Oakley filed a motion to withdraw as counsel of record for Miller. [Record No. 402]  He explained that Miller expressed a desire to withdraw his guilty plea and that the defendant believed that he [Oakley] had pressured him to plead guilty at trial.  The Court granted Oakley's motion and appointed new counsel for all further proceedings. [Record No. 403]  On January 20, 2023, Miller's *pro se* motion to withdraw his guilty plea was filed in the record.  [Record No. 407]

Miller has provided transcripts of a portion of his communications with Oakley in support of his motion to withdraw.  [Record No. 421-1]  The communications largely relate to the period prior to and during the first trial held in November 2022.  The conversations reflect that Miller maintained his innocence at that time and asserted that his case was fraudulent. [*See id.* at pp. 19, 20, 21.]  Prior to the defendant's first trial, Oakley advised Miller of the different phases of trial preparation and indicated several times that he was thoroughly preparing for trial.  [*See, e.g., id.* at pp. 9-10, 21.]  Counsel advised Miller of the consequences of proceeding to trial, mentioning that if Miller were convicted, he would face a potential sentence of life imprisonment.  [*Id.* at p. 24]  Oakley also noted that Miller could plead guilty

and stated that he had "options that can put [him] back in [his] children's life [sic] without having to roll the dice at a jury trial." [*Id.* at p. 19]

After the defendant's first trial ended in a mistrial, Oakley cautioned Miller against going to trial a second time, emphasizing that the government's case would be stronger at retrial. [*Id.* at p. 29] But despite warning the defendant that "there's no beating this case," Oakley reaffirmed that he was prepared to represent Miller going forward. [*See id.* at pp. 24-25.] Notably, there is no record of communications between counsel and Miller from December 13, 2022 (the first day of Miller's retrial), through January 3, 2023 (the day the defendant first contacted Oakley about withdrawing his plea agreement).

After Miller expressed a desire to withdraw his guilty plea in January, Oakley suggested that he [Oakley] file a motion to withdraw as counsel of record for the defendant. Oakley reasoned that he was not willing to file a motion to withdraw the defendant's guilty plea alleging that he "forced [Miller] to do something [the defendant] didn't want to do." [*Id.* at p. 31] After Oakley was permitted to withdraw, Miller filed the *pro se* motion. [Record No. 407] Attorney Pamela Ledgewood was initially appointed as replacement counsel for Miller for further proceedings. However, attorney Ledgewood was unwilling, from an ethical standpoint, to file the materials that Miller wished to file in support of his motion to withdraw his guilty plea. As a result, attorney Ledgewood was relieved of further representation of the defendant and attorney Kevin West was appointed for Miller. [Record Nos. 422, 423]

The United States opposes the defendant's motion. [Record No. 426] It contends that the delay in filing the motion to withdraw, the circumstances surrounding the defendant's guilty plea, and Miller's familiarity with the criminal justice system, weigh against permitting him to withdraw his guilty plea. [Record No. 426] Specifically, the government notes that

Miller's "sworn declarations" professing his guilt at his re-arraignment flatly contradict the assertions in his messages to Oakley that he is factually innocent of the conspiracy charge. [*Id.* at p. 8] Additionally, the government emphasizes that the defendant's decision to proceed to trial on two occasions undermines his claim that counsel coerced him to plead guilty (based primarily on communications before the first trial in November 2022), demonstrating that "[h]e was fully aware of his constitutional right to have a jury unanimously determine his guilt." [*Id.* at p. 9]

During the evidentiary hearing requested by the defendant and held on March 8, 2023, counsel for Miller explained that the defendant no longer wished to present evidence or testimony regarding the motion to withdraw his guilty plea. Instead, he argued that the defendant should be permitted to withdraw his guilty plea because attorney Oakley pressured him into pleading guilty as outlined in Miller's prior, unsworn statements. Specifically, he asserted that Oakley claimed that he would not vigorously represent the defendant if he continued with the second trial and that the defendant would face severe penalties if convicted by a jury.

The United States argues that the defendant has failed to meet his burden of establishing a "fair and just reason" for withdrawing his plea under Rule 11 of the Federal Rules of Criminal Procedure. As it explains, the defendant made no indication that he was innocent of the crime charged during final plea negotiations occurring December 14, 2022, nor did he suggest that his attorney had forced him to plead guilty in his sworn statements to the Court. Moreover, the United States noted that the defendant's prior experience in both state and federal criminal proceedings undermines any suggestion that he did not understand the consequences of deciding to plead guilty.

## II.  Legal Standard

"A defendant does not have an absolute right to withdraw a guilty plea." *United States v. Ellis*, 470 F.3d 275, 281 (6th Cir. 2006) (citations omitted).  Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure provides that a defendant may withdraw his guilty plea "after a court accepts the plea, but before it imposes [a] sentence," if the defendant can demonstrate a "fair and just reason for requesting the withdrawal."  As the Sixth Circuit has explained, the purpose of Rule 11 is to permit "a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant 'to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.'"  *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (per curiam) (citation omitted).

Courts consider several factors in determining whether to grant a defendant's request to withdraw his guilty plea.  They include, but are not limited to, the following: "(1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted." *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *abrogated on other grounds by United States v. Caseslorente*, 220 F.3d 727 (6th Cir. 2000).  "The relevance of each factor will vary according to the 'circumstances surrounding the original entrance of the plea as well as the

motion to withdraw.'" *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008) (citation omitted).

### III.  Analysis

#### 1.  The Delay in Filing the Motion to Withdraw

Initially, courts consider "the length of time between the entry of the guilty plea and the filing of the motion to withdraw it." *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987).  "The shorter the delay, the more likely a motion to withdraw will be granted, and a defendant's reasons for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time." *United States v. Baez*, 87 F.3d 805, 808 (6th Cir.1996) (citation omitted).  Courts also evaluate this factor on a case-by-case basis, as the Sixth Circuit has not "fashioned a precise cut-off point beyond which delay is unreasonable." *United States v. Carpenter*, 554 F. App'x 477, 481 (6th Cir. 2014).

That said, the Sixth Circuit has "affirmed decisions denying the withdrawal of a guilty plea after delays as short as one or two months." *United States v. Carpenter*, 554 F. App'x 477, 481 (6th Cir. 2014) (citing *Spencer*, 836 F.2d at 239 (upholding district court's denial of motion to withdraw filed 35 days after defendant pleaded guilty)); *see also United States v. Carr*, 740 F.2d 339, 345 (5th Cir. 1984) (upholding denial of motion to withdraw filed twenty-two days after guilty plea was entered).  In this case, this factor weighs against granting Miller's request.

Miller moved to withdraw his guilty plea on January 20, 2023—37 days after he pleaded guilty. [Record Nos. 374, 407]  And even if the Court were to consider the date Miller messaged Oakley requesting to withdraw his plea as the date he initially sought to move for withdrawal, that shorter delay would nonetheless weigh against granting the defendant's

motion. [Record No. 421, p. 30] A delay of several weeks suggests that his request to withdraw constitutes a tactical decision, rather than an earnest attempt to undo a plea that was entered into unknowingly. *Compare United States v. Roberts*, 570 F.2d 999, 1008 (D.C. Cir. 1977) (granting a motion to withdraw a guilty plea filed "a few days after the initial pleading"), *with Carr*, 740 F.2d at 345 (denying a motion to withdraw filed "twenty-two days" after defendant pleaded guilty).

But in this case, there are additional reasons for concluding that Miller's delay was a tactical decision. The defendant did not enter a guilty plea with any confusion regarding the evidence to be presented by the government during trial or his role in the conspiracy charged in Count 1 of the Superseding Indictment. Instead, he proceeded to trial on two separate occasions with full knowledge of the evidence presented during the first trial and an extensive summary of the evidence the government would present during the second trial, based on opening statements and after hearing significant evidence on the first day of the second trial. And the defendant had the opportunity to assess the jury selected on both occasions.

The undersigned concludes that Miller decision to enter a guilty plea was based on full and complete knowledge of the evidence that likely would be considered by the jury. Such knowledge is glaringly absent in most cases in which a defendant enters a plea and then later seeks to reverse that decision. The lapse of time between Miller's guilty plea and his later motion to withdraw the motion does not support the relief sought by the defendant.

### 2. The Reason for the Defendant's Delay

Relatedly, Miller has not explained why he waited over five weeks to file his motion to withdraw. And even if the time is reduced by any confusion regarding whether Oakley would be filing the motion, relief under this factor is still not warranted. When considering whether

a defendant's delay in filing was excusable under this factor, courts look to when the defendant became aware of the grounds for his motion to withdraw his plea. As such, "even a relatively short delay is damaging to a defendant when he knew at the time of his plea hearing the grounds upon which he could seek to withdraw his plea." *Carpenter*, 554 F. App'x at 481. In *Carpenter*, the Sixth Circuit found that the defendant's delay in filing was not excusable because the defendant knew of the basis for his request to withdraw—namely, that his attorney "encouraged him to make up a story to appease the court" when pleading guilty—at the time of his plea hearing. *Id.*

The *Carpenter* court recognized that "certain abusive or coercive behavior might excuse an otherwise lengthy delay because, by its nature, the coercion both forces a defendant into pleading guilty and prevents the defendant from attempting to withdraw his plea," but it nonetheless found that the defendant's delay remained suspect. First, the court noted that the defendant's reason for delay was unconvincing because he waited an additional three months after obtaining standby counsel to file his motion. *Id.* at 482. Additionally, the court was not convinced that the defendant had no choice but to wait to file his motion to withdraw because he was not forced to rely on counsel in voicing his concern over his guilty plea: "if [the defendant] really wished to withdraw his guilty plea, he could have expressed his intention to the court prior to retaining new counsel." *Id.*

As noted above, Miller claims that his motion to withdraw should be granted because Oakley coerced him into entering a guilty plea. [Record No. 407] But following the *Carpenter* court's reasoning, the defendant has failed to explain why he waited twenty days after pleading guilty to seek to withdraw his plea when he was aware of the basis for his motion to withdraw at the time of his plea hearing. 554 F. App'x at 481.

There is no evidence suggesting that Oakley's alleged coercion prevented the defendant from seeking to withdraw his plea at an earlier time. In fact, Oakley himself suggested filing a motion to withdraw as counsel so that Miller could proceed with his motion to withdraw his plea. [Record No. 421-1, p. 31] And Oakley's communications with the defendant once the issue was raised indicate counsel's disagreement with Miller's suggestion of coercion. In short, the defendant has not established that his relationship with his trial attorney prevented him from articulating his concerns over his guilty plea at an earlier time.

But even if the Court assumed that Miller's relationship with Oakley prevented the defendant from filing his motion to withdraw sooner, the defendant nonetheless could have "expressed his intention [to withdraw his plea] to the court." 554 F. App'x at 481. The Court provided Miller with the opportunity to express any dissatisfaction with his attorney at his plea hearing, specifically asking Miller whether he was "satisfied with the representation given to [him] by [his] attorney." [Record No. 424, pp. 6, 7] Miller answered in the affirmative. [*Id.*] His failure to advise the Court of any concern over his attorney's representation or to indicate that he wished to proceed with trial weigh against granting his motion.

### 3. The Defendant's Assertions of Innocence

The defendant's inconsistent assertions of innocence similarly support denying his motion to withdraw his plea. "[T]he absence of a defendant's vigorous and repeated protestations of innocence support the denial of a motion to withdraw a guilty plea." *United States v. Baez*, 87 F.3d 805, 809 (6th Cir. 1996). Miller's statements to counsel maintaining his innocence are directly contradicted by his admission of guilt during his plea hearing. [*See* Record No. 424, pp. 14, 16.] Moreover, according to the assistant United States attorney who interacted with Miller on the morning of December 14, 2022, the defendant gave no indication

- 11 -

that he was innocent during plea negotiations and immediately before entering his guilty plea. In short, Miller has not presented any reliable evidence to contradict his "solemn declarations in open court" that he was guilty, statements which "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

### 4. The Circumstances Underlying Entry of the Guilty Plea

Next, the circumstances surrounding entry of Miller's guilty plea do not support granting his motion. Simply put, Miller has not demonstrated that Oakley forced him to plead guilty. Again, Miller claims that Oakley pressured him to change his plea during retrial by threatening him "with the fear of recieving [sic] a life sentence [he] continued with trial." The Sixth Circuit addressed a similar argument in *United States v. Dalalli*, 651 F. App'x 389 (6th Cir. 2016).

In *Dalalli*, the defendant pleaded guilty on the morning of trial to several counts related to his alleged participation in a conspiracy to defraud the government. The plea was entered, despite having no written plea agreement with the United States. *Id.* at 392. Five months later, the defendant moved to withdraw his plea, alleging that "he had pled guilty because of pressure and emotional exhaustion and because he believed he might face more lenient sentencing with a guilty plea." *Id.* at 394-95. The district court's denial of the motion to withdraw was upheld, in part because of statements from the defendant's attorney that counsel was "prepared to go with trial . . . [and] would finish the trial and do [his] best for [the defendant." *Id.* at 402. Because the record demonstrated that counsel was willing to proceed with trial in the defendant's case and because the defendant provided no evidence of improper coercion, the circuit court concluded that "[i]f there was any pressure on Dalalli to plead guilty, it was pressure he put on himself." *Id.*

In the same way, the partial records of Miller's communications with Oakley demonstrate that Oakley did not pressure the defendant into pleading guilty. First, the defendant cannot rely on counsel's statements prior to his first trial to definitively establish coercion during the second trial, as Miller obviously disregarded those statements when he chose to proceed to trial on both occasions. And Miller has not provided *any* evidence of improper coercion prior to his retrial. Just as counsel in *Dalalli* stated that he was prepared to represent the defendant, Oakley told Miller that even if he thought going to trial was unwise, counsel was ready to provide Miller with the representation he was "entitled to under the [C]onstitution." [Record No. 421-1, p. 25] And while counsel in *Dalalli* only represented the defendant for one day of trial, Oakley's thorough preparation is evidenced by the fact that he represented the defendant at not one, but two trials. Miller cannot point to any evidence in the record to show that Oakley was unprepared or ineffective during the first trial or during the first day of the second trial. In summary, Miller has not offered any evidence upon which the Court can rely to conclude that Oakley coerced him into pleading guilty.

Oakley's statements regarding the government's enhanced preparation for Miller's retrial and the defendant's potential sentence if convicted do not constitute coercion. Rather, Oakley informed the defendant of the consequences of his decision to proceed to trial. As the government correctly notes, Oakley's statement that Miller would face a potential sentence of life imprisonment if convicted is "undoubtedly correct." As the Court noted at the defendant's plea hearing, the charge and drug quantity alleged in Count 1 yields a sentence of "not less than ten years nor more than life by statute." [Record No. 424, p. 8] And while counsel may have overestimated the defendant's sentencing guidelines range, an inaccurate comment does not amount to improper coercion. [Record No. 421-1, p. 23] *See United States v. Stephens*,

906 F.2d 251, 253 (6th Cir. 1990) ("[T]he mere fact that an attorney incorrectly estimates the sentence a defendant is likely to receive is not a 'fair and just' reason to allow withdrawal of a plea agreement.").

Moreover, Oakley's messages to Miller prior to the defendant's retrial do not carry significant weight, as the defendant ultimately chose to proceed to trial a second time. Again, as the government correctly notes, Miller has provided no evidence demonstrating coercion during the window of time that is of great significance to the Court's analysis: the night after the first day of his retrial through the morning of the second day of trial. [*See* Record No. 426, p. 11 ("Miller has provided no explanation as to how his will was overborne after exercising his right to a jury trial.").] Miller did not testify during the evidentiary hearing scheduled at his request and he did not call Oakley as a witness during this hearing. Thus, Miller has not demonstrated that his decision to change his plea was the result of improper coercion or was otherwise made involuntarily.

Finally, Miller's claim that he was coerced lacks credibility because the evidence in the record demonstrates that his plea was voluntary. After ensuring that the defendant was competent and capable of entering a guilty plea, the Court specifically asked Miller whether "anyone made any threats or in any way forced [him] to enter a guilty plea in the case." [Record No. 424, p. 7] Miller confirmed that he had not been threatened or forced into pleading guilty. [*Id.* at p. 8] He has not provided any *reliable* evidence to discredit the Court's extensive "change-of-plea colloquy . . . [which] included all the elements needed to establish a voluntary and knowing plea." *United States v. Powell*, 798 F.3d 431, 434 (6th Cir. 2015).

### 5. The Defendant's Background

Miller's background also weighs against granting his motion to withdraw. The Court asked Miller several questions during his re-arraignment hearing to confirm that he was competent and capable of entering a guilty plea, specifically inquiring about the defendant's age, education, medical history, and work experience. [Record No. 424, pp. 3-6] None of the defendant's answers suggested that he possessed any characteristics that would prevent him from knowingly, voluntarily or willingly entering a guilty plea. Specifically, the defendant indicated that he attended high school in California, was able to read and write, and was not under the influence of any drugs or alcohol at the time of his plea. [*Id.*] *See United States v. Goddard*, 638 F.3d 490, 495 (6th Cir. 2011) (noting that the defendant's "well-educated" background supported the conclusion that he "understood the consequences of his actions" when pleading guilty).

### 6. The Defendant's Prior Experience with the Criminal Justice System

The defendant's experience with the criminal justice system supports the conclusion that he is not entitled to the relief sought. Under this factor, courts will hesitate to grant a defendant's motion to withdraw when the defendant has had "sufficient contact with the criminal justice system to fully understand his rights and the process." *Goddard*, 638 F.3d at 495. Here, Miller has prior convictions for possession with the intent to distribute cocaine: one in state court in 1995, and one in federal court in 2008. As the government notes, Miller likely would have qualified as a career offender but for the age of the state court conviction. The defendant is sufficiently familiar with the criminal justice system to understand the consequences of his decision to plead guilty.

### 7. The Prejudice to the Government

Courts need not address whether granting the defendant's motion to withdraw his guilty plea would prejudice the government if he fails to show a fair and just reason that warrants withdrawal under Rule 11.  *See Spencer*, 836 F.2d at 240 ("[T]he government is not required to establish prejudice that would result from a plea withdrawal, unless and until the defendant advances and establishes a fair and just reason for allowing the withdrawal.").  Because Miller has not established a fair and just reason for granting his motion to withdraw in this case, "this factor [is] immaterial to the [Court's] decision."  *Goddard*, 638 F.3d at 495.  However, the Court will nonetheless address this issue.

The undersigned concludes that the government would be severely prejudiced if Miller were permitted to withdraw his guilty plea.  In *United States v. Dalalli*, the Sixth Circuit found prejudice to the government when the defendant sought to withdraw a guilty plea that he had entered in the middle of trial.  651 F. App'x at 403.  It reasoned that reopening the case would burden the government because the defendant "did not plead guilty until after the government was fully prepared for trial and had finished presenting the first day of its case."  *Id*.  Additionally, reopening the defendant's case sixth months after he pleaded guilty could prejudice the government's preparation efforts because, "with the passage of time, witnesses' recollections may fade, and even with the power of subpoenas, the government may be unable to secure some of its witnesses."  *Id*.

The same circumstances are present here.  Miller pleaded guilty on the second day of his second trial.  Thus, the government had fully prepared for trial on two occasions and had twice presented its case to a jury.  One co-defendant testified during the first trial.  Whether she (or others) would testify during a third trial is uncertain.  Additionally, the government

would face the prospect of recalling several out-of-state witnesses. Forcing the United States to prepare for trial a third time clearly would be unduly burdensome. Accordingly, issues of prejudice would weigh against granting Miller's motion.

### IV. Conclusion

Miller has not demonstrated that a "fair and just reason" exists for granting his motion to withdraw his guilty plea. Instead, the Court concludes Miller's motion is based on a tactical calculation after he knowingly and voluntarily entered a guilty plea. While the defendant may not at this time accept responsibility for his criminal conduct, he is not factually innocent and cannot in good faith claim such at this stage of the proceedings. Finally, the Court concludes that his trial attorney did not exert undue influence or coercion in forcing Miller to enter a guilty plea. Accordingly, it is hereby

**ORDERED** that Defendant Miller's motion to withdraw his guilty plea [Record No. 407] is **DENIED**.

Dated: March 9, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky